UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HECTOR CASRO-PASTRANA,

                       **Plaintiff,**

v.                                                **18-CV-6902**

**COMMISSIONER OF SOCIAL SECURITY,**

                       **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 21. Hector Castro-Pastrana ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 16, 19. For the following reasons, Plaintiff's motion (Dkt. No. 16) is denied, and the Commissioner's motion (Dkt. No. 19) is granted.

## BACKGROUND

On February 2, 2015, Plaintiff filed for Supplemental Security Income ("SSI"), alleging disability beginning on June 1, 2014, due to seizures, diabetes, back pain,

hepatitis C, and epilepsy.  Tr. at 63, 324-29.[1]  Plaintiff's application was denied at the initial level and he requested review.  Tr. at 209-17; 218-27.  Administrative Law Judge Mark Hecht ("the ALJ") conducted a hearing on October 27, 2017.  Tr. at 77-139.  Plaintiff, who was represented by counsel, testified as did two medical experts and an impartial vocational expert.  Tr. at 77-139.  On November 6, 2017, the ALJ issued a decision in which he found that Plaintiff was not disabled and, therefore, not eligible for benefits.  Tr. at 57-76.  The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-8.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.  There is also a supplemental transcript at Docket No. 12, which the undersigned has reviewed and considered, but does not refer to herein.

impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  See *Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position.  See *Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above.  Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 2, 2015, the application date.  Tr. at 65.  At step two, he found that Plaintiff had the following severe impairments:  diabetes mellitus; mild degenerative disc disease of the thoracic spine; mild obesity, and seizure disorder.  Tr. at 65-66.[2]  The ALJ noted that Plaintiff's hepatitis, hypertension, drug abuse, and depression were not severe.  Tr. at 65-66.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 11.02 (Epilepsy).  Tr. at 66.  Next, the ALJ found that Plaintiff retained the RFC to perform sedentary or light work as defined in 20 C.F.R. § 404.967, except for an inability to work around moving machinery, unprotected heights, or driving as a requirement of employment.  Tr. at 66-69.

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized at length in the papers.

Continuing to the fourth step, the ALJ found that Plaintiff was able to perform jobs that exist in significant numbers in the national economy, including the sedentary, unskilled jobs of sorter, addresser, and order clerk.  Tr. at 69.  Accordingly, concluded the ALJ, Plaintiff was not under a disability from February 2, 2015, through the date of his decision, November 9, 2017.  Tr. at 70-71.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 16, 19.  Plaintiff raises a single challenge to the Commissioner's decision; that is, that the ALJ erred in weighing the opinion of consulting examiner, Dr. Ram Ravi.  Dkt. No. 16-1, pp. 7-9.  The Commissioner contends that the ALJ's RFC finding is supported by substantial evidence, including the opinion of Dr. Ravi.  Dkt. No. 19-1, pp. 5-9.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**The ALJ's Assessment of Dr. Ravi's Opinion**

Dr. Ravi examined Plaintiff at the behest of the Division of Disability Determination on March 5, 2015.  Tr. at 459-62. Based upon his examination, Dr. Ravi concluded that Plaintiff "has no limitations to sitting or standing," "moderate limitations to bending, pushing, pulling, lifting, and carrying," "should avoid squatting, due to his low back pain," and "should avoid driving, operating machinery, heights and uneven surfaces, due to [his] history of seizures."  Tr. at 462.  The ALJ gave Dr. Ravi's assessment "significant weight."  Tr. at 69.  The ALJ also afforded "significant weight" to the opinions of

the testifying medical experts, Arthur Lorber, MD (Tr. at 112), and John David Sabow, MD (Tr. at 114).  After reviewing the documentary evidence and hearing Plaintiff's testimony, Dr. Lorber testified that "[t]here is no evidence . . . to support a severe impairment involving [the claimant's] musculoskeletal system[,]" and that "[the claimant] does not require any restricted activities based upon the evidence of record."  Tr. at 113.  Dr. Sabow, a neurologist, testified that "[t]here is no question that this individual [the claimant] has post traumatic epilepsy . . . ."  Tr. at 117.  Dr. Sabow noted, however, that Plaintiff's compliance with his anti-seizure medication (Dilantin) was "poor," Tr. at 118, as evidenced by a blood test taken after his emergency admission following a seizure, which revealed that Plaintiff had "literally zero" Dilantin in his system.  Tr. at 117-18, 750.[3]

Plaintiff argues that this case should be remanded because the ALJ, while purporting to give Dr. Ravi's opinion "significant weight," "failed to fully review it, and implicitly rejected most of the opinion without explanation and without incorporating it into the RFC."  Dkt. No. 16-1, pp. 6-7.  This Court does not agree, but rather, finds that the ALJ implicitly adopted and accounted for Dr. Ravi's opinion by limiting Plaintiff to sedentary or light work, with additional limitations related to his epilepsy.  Tr. at 66-69.  After reviewing the entire record, the ALJ found that the limitations indicated by Dr. Ravi (moderate limitations in bending, pushing, pulling, lifting, and carrying; avoiding squatting, driving, operating machinery, heights and uneven surfaces) were consistent with the evidence of record.  See Mongeur, 722 F.2d at 1039 (holding that the report of a consultative physician

---

[3] At one point, in December of 2017, Plaintiff was not even being treated by a neurologist.  Tr. at 532 (Dr. Suzanne Brendze noting on December 1, 2016, that Plaintiff was "unsure of [his] exact [daily] dose" of Dilantin," and is "[c]urrently in need of a neurologist").  Tr. at 532.

can constitute substantial evidence to support an ALJ's finding that the claimant is not disabled); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (holding that the ALJ rightly concluded that the two consultative psychologists' opinions, finding that plaintiff was able to perform unskilled work, were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

Plaintiff's argument fails for another reason:  it overlooks that the sedentary and light occupational bases inherently account for those limitations he alleges that the ALJ did not accommodate.  By its very definition, sedentary work involves:

> the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools.
>
> Limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base.
>
> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.
>
> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations.

<u>Titles II & XVI: Determining Capability to Do Other Work – Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work</u>, SSR 96-9P (July 2, 1996), 1996 WL 372185, at *3, 6-8.  "[T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time,

8

depending on the particular job).” <u>Titles II & XVI: Capability to Do Other Work – The Med.-Vocational Rules As A Framework for Evaluating A Combination of Exertional & Nonexertional Impairments</u>, SSR 83-14 (Jan. 1, 1983), 1983 WL 31254, at *4.  In fact, "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." <u>Titles II & XVI: Capability to Do Other Work – The Med.-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments</u>, SSR 85-15 (Jan. 1, 1985), 1985 WL 56857 at *7.  Thus, by its very definition, limiting Plaintiff to sedentary work accounted for the postural limitations Dr. Ravi assessed.

Limiting Plaintiff to light work similarly accounted for these restrictions.  In addition to the characteristics discussed above, light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds; requires sitting most of the time, but with some pushing and pulling of arm-hand or leg-foot controls; and can be accomplished with occasional, rather than frequent, stooping. <u>Titles II & XVI: Determining Capability to Do Other Work – the Med.-Vocational Rules of Appendix 2</u>, SSR 83-10 (Jan. 1, 1983); 1983 WL 31251, at *5-6.  Numerous courts within the jurisdiction of the Second Circuit Court of Appeals have recognized that a claimant's moderate limitations in the ability to bend, lift, carry, push, or pull do not preclude light work. *See Burch v. Comm'r of Soc. Sec.,* No. 17-CV-1252P, 2019 WL 922912, at *4-6 (W.D.N.Y. Feb. 26, 2019) (collecting cases and finding that the consultative examiner's opinion that the claimant had moderate limitations in the ability to lift, carry, push, and pull, along with the ALJ's stated reasons, "support[ed] the finding that, despite the moderate

limitations[,] . . . [the claimant] could still perform light work"); *Richardson v. Colvin*, No. 15-CV-6276 CJS, 2016 WL 3179902, at *8 (W.D.N.Y. June 8, 2016) (collecting cases for the proposition that "moderate limitations [on 'repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying'] . . . are frequently found to be consistent with an RFC for a full range of light work") (internal citations omitted).

As in *Burch*, the ALJ in this case relied on the opinion of the consultative examiner, as well as Plaintiff's "minimal treatment history," and "essentially normal findings" in deciding that Plaintiff was capable of light work. *Burch*, 2019 WL 922912, at *4-6; Tr. at 68. "While conservative treatment alone is not grounds for an adverse credibility finding," *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), "the ALJ may take it into account along with other factors." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646-47 (S.D.N.Y. 2019), *appeal dismissed* (May 31, 2019); *see also Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (the ALJ was permitted to weigh the claimant's "conservative treatment" regimen in assessing her credibility); *Dixon v. Berryhill*, 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record.") (citations and quotation marks omitted) (collecting cases). The ALJ also properly considered Plaintiff's apparent non-compliance with his prescribed anti-seizure medication when assessing his claim that he was disabled by epilepsy. *Turner v. Berryhill*, No. 1:16-CV-00405 (MAT), 2017 WL 4285902, at *3 (W.D.N.Y. Sept. 27, 2017). The ALJ did not err in

considering these factors in determining that Plaintiff was capable of sedentary and light work.

Based on the foregoing, this Court finds that the ALJ did not err in assessing the medical opinions before him, including that of Dr. Ravi, and in formulating the RFC. The law is clear that an ALJ's RFC finding does not need to be based on a particular medical opinion or medical source statement. *Monroe v. Berryhill*, 676 F. App'x 5, 9 (2d Cir. 2017); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 1013) (reasoning that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of [the] medical sources cited in h[er] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"). Moreover, "the ultimate finding of whether a claimant is disabled and cannot work . . . [is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotations and citations omitted).

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this

Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is hereby DENIED, and the Commissioner's motion for Judgment on the pleadings (Dkt. No. 19) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:　　Buffalo, New York
　　　　　　August 24, 2020

　　　　　　　　　　　　　　　　　　*s/ H. Kenneth Schroeder, Jr.*
　　　　　　　　　　　　　　　　　　**H. KENNETH SCHROEDER, JR.**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**